## Aaron K. Kulp *v.* Catharine Brant, Appellant.

*Married woman—Surety for husband's debt—Fraud—Agency.*

A married woman may assign her personal property as security for her husband's debt; and the assignment is good, although the husband made false representations to his wife to secure the assignment, if the creditor had no knowledge of the fraud. In such a case the husband cannot be considered as the agent of the creditor to secure the assignment.

*Collateral security—Statute of limitations—Surety.*

Even if a debt be barred by the statute of limitations, the collateral remains liable, and a third person who has furnished the collateral is not prejudiced by the debtor giving a bond for the debt, in place of a note which has been barred by the statute.

Argued Feb. 1, 1894.   Appeal, No. 80, Jan. T., 1894, by defendant, from judgment of C. P. Montgomery Co., June T., 1891, No. 5, on feigned issue, in favor of plaintiff.   Before GREEN, WILLIAMS, McCOLLUM, DEAN and FELL, JJ.   Affirmed.

Feigned issue to determine ownership of proceeds of life insurance policy, paid into court.   Before WEAND, J.

The facts appear by the opinion of the Supreme Court.

*N. H. Larzelere, W. M. Goodman* with him, for appellant.— Appellee is bound by the representations made by the husband when the assignment was made : Jones v. Bldg. Assn., 94 Pa. 215 ; Mundorff v. Wickersham, 63 Pa. 87 ; Keough v. Leslie, 92 Pa. 424.

Appellant was discharged by the change of obligations : Ayers v. Wattson, 57 Pa. 360 ; Moorehead v. Duncan, 82 Pa. 488 ; Shrewsbury Saving Inst.'s Ap., 94 Pa. 312 ; Holt v. Bodey, 18 Pa. 212 ; Kemmerer's Ap., 125 Pa. 292.

Kulp was not an innocent holder as to amount of antecedent debt : McCutcheon's Ap., 99 Pa. 133.

*Montgomery Evans, Louis M. Childs* with him, for appellee. —The misrepresentations of a principal to a surety in the absence of the creditor are not admissible to discharge the surety : Johnston v. Patterson, 114 Pa. 398.

A married woman may assign her personal property as collateral for her husband's benefit and it cannot be repudiated except for fraud by the assignee : Dando's Ap., 94 Pa. 76 ; Brown's Ap., 94 Pa. 362 ; Powell's Ap., 98 Pa. 403.

Even though the debt were tolled by the statute of limitations, the collateral remained liable : Hartranft's Est., 153 Pa. 530 ; Hutchinson v. Woodwell, 107 Pa. 509.

OPINION BY MR. JUSTICE DEAN, July 11, 1894:

On September 2, 1868, Nathan R. Brant took out a policy of insurance on his life in the sum of $2,000, in the Ætna Life Insurance Company.   The beneficiary in the policy was his wife, Catharine Brant, and it was declared to be for her sole separate use and benefit.   The annual premium was $67.52.   On the 2d

of August, 1876, Mrs. Brant, joined by her husband under their seals duly attested, executed a formal transfer of the policy to Kulp, this plaintiff, as collateral for a debt owing by the husband to Kulp, and the assignment stipulates that Kulp is to have "all benefit and advantage to be derived therefrom, to the extent of such interest as he may have when said policy becomes a claim." Brant died July 10, 1890, and the company, on being notified of his death, and also that there were conflicting claims to the policy by Kulp and Mrs. Brant, paid the amount of it into court. An issue was then framed between Kulp as plaintiff and Mrs. Brant as defendant, to determine their rights, which was submitted to the court below without a jury for judgment.

At the trial, Mrs. Brant contended that, at the time of the assignment of the policy, the actual indebtedness of her husband to Kulp, for which it was collateral, was only $500; that to induce her to execute it, her husband, acting for Kulp, represented to her his indebtedness was but $300, and he was to get the same day an additional $200; that, relying on this statement of her husband, who, she alleges, was Kulp's agent to procure the assignment, she executed it. Kulp contended that the assignment was collateral for a debt of $1,220.29, which, with interest and subsequent payment of annual premiums by him, more than equaled the whole amount of the policy.

The court below found as facts: (1) That the actual indebtedness of Brant to Kulp on the day of the assignment, and immediately prior thereto, was $684.29; that on same day and immediately after it was made, Kulp made a further loan to Brant of $536, making the whole indebtedness as of that date, $1,220.29. (2) That this last loan was made in consideration of the assignment of the policy as security for the whole indebtedness. (3) That Kulp had paid after the assignment annual premiums amounting to $364.26, and had received dividends, $128.88. (4) Mrs. Brant did not know how much her husband owed Kulp, and he, Kulp, had no communication with her upon the subject until 1883, when he received an order from Brant to draw the dividends. (5) Kulp had no knowledge of any representations made by Brant to his wife to induce her to execute the assignment, and there is no competent evidence that any were made.

Computing interest on Kulp's whole debt, and adding there-to the amount of annual premiums paid by him, less dividends received, the policy did not pay Kulp's debt in full, and so the whole fund in court, less costs, was directed to be paid him, and judgment entered in his favor. From that judgment Mrs. Brant brings this appeal.

There are ten assignments of error, only three of which are important in determining the rights of the parties to the fund. The appellant complains that the court erred: (1) In not finding as a fact that Mrs. Brant was induced to make the assignment by false and fraudulent representations on the part of her husband. (2) In the conclusion of law that, even if her husband practiced a fraud upon his wife, Kulp, being no party to it, stands in the light of an innocent purchaser for value without notice. (3) In not finding as a conclusion of law from the undisputed facts, that Brant, in procuring the assignment from his wife, was the agent of Kulp, and therefore Kulp was bound by the representations of his agent.

As to the finding of fact, the only testimony bearing on it was that of Mrs. Brant, which was received under objection, the court reserving the right to strike it out if decided to be incompetent. Without considering the questions as to whether the statements made by the husband were confidential communications, or whether the testimony of the wife, being directly against the husband in that it invalidated for fraudulent representations a paper which he had delivered to his creditor as security for a loan, were admissible, we may assume that he did not state the truth to his wife when he procured her signature. But this does not affect Kulp, unless he was a party to the fraud. The policy was the wife's property, a chose in action. The premiums having been paid for about eight years, it had a present worth or surrender value, as also the full value contingent on the death of the assured, if payments were kept up. It has so often been decided that a married woman may assign her personal property as security for her husband's debts, and that, if the creditor acts on the faith of the assignment, she will not be allowed to repudiate it, that it is useless to again cite the authorities. From her own statement, she executed an assignment of this property to Kulp as security for an existing debt of her husband, and an additional loan to be made

the same day. She says, however, that her husband told her he owed Kulp but $300, and he was to get $200 more, and that Kulp was then to carry the policy, that is, to keep up the annual payments. The court on ample evidence has found that, at the time of the assignment, Brant owed Kulp $684.29, and that, on the execution of the assignment, he loaned him $536 more. The misrepresentation was in the amount of the debt, and the amount the husband intended to and did borrow.

She, then, from her own statement, made a ·formal assignment of this policy to her husband's creditor to secure an existing debt and a further loan. The assignment is general, without limitation as to amount, and is to Aaron K. Kulp " as collateral." There is nothing in her evidence to show that Kulp had any knowledge of any misrepresentation by the husband, and he denies all knowledge of any such misrepresentation. The misrepresentations of a principal, made to his sureties in the absence of the creditor, and of which representations the creditor had no knowledge, will not discharge the surety who was induced to sign by reason of the false representations: Johnston v. Patterson, 114 Pa. 398. Here the assignment was to Kulp " as collateral to the extent of such interest as he may have when said policy becomes a claim." That is, Mrs. Brant said to Kulp in substance, " Loan my husband whatever amount you choose on this $2,000 policy; I pledge it as security for such loan." With a word or two, she could have limited the pledge as security for a debt of $500, but in the writing it is unlimited. As Kulp had no knowledge of the secret limitation of the debt, as between her and her husband, his right is not affected by it.

As to the averment that Brant was the agent of Kulp in procuring the assignment, and as principal, Kulp is bound by Brant's representations, it is not sustainable. He was the agent of Kulp in the sense that every "borrower is the servant of the lender." Brant wanted more money; Kulp was willing to loan him more if security were given for the existing debt and the further loan; Brant, to obtain the loan, induced his wife to pledge her property. He had no authority from Kulp to make any representations. He was no more the agent of Kulp than the borrower who presents his notes in bank for discount, and is asked to procure an indorser, is the agent of the bank when he requests a friend to indorse for him.

Nor does the fact that subsequent to the assignment of the policy, Kulp took a bond from Brant as evidence of the debt, in place of a note which had been barred by the statute, affect the right of Kulp to his collateral. It in no way prejudiced the surety, on the contrary, tended to her advantage. As we held in Hartranft's Estate, 153 Pa. 530, even though the original obligation might be barred, the collateral remained answerable in the hands of the creditor.

This necessarily disposes of all the assignments of error; they are overruled, the judgment affirmed, and the appeal is dismissed at costs of appellant.